IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF ARKANSAS

**ARTHUR CARSON**                                                                               **PLAINTIFF,**

vs.                            CASE NO. 4:19-cv-00256-BSM

**ROGER LACY, dba D & B JANITORIAL SERVICES;** *et al*.        **DEFENDANTS.**

## BRIEF IN SUPPORT OF MOTION TO DISMISS

### I.   INTRODUCTION

Plaintiff's Complaint pleads that:

1.   First Advantage[1] allegedly violated the Arkansas and Federal Civil Rights Acts by engaging in "concerted action with" co-Defendant D&B/Laidlaw's[2] alleged "total ban on Employing Prior felons.'" ECF No. 2 (Complaint) at ¶¶ III.3-4.

2.   First Advantage allegedly violated the Fair Credit Reporting Act by: a) creating a consumer report without his consent; b) including an alias in that report; and c) failing to properly respond to his correspondence regarding those issues. *Id*. at ¶¶ III.1; III.4

First Advantage has moved to dismiss these claims on the basis that:

1.   Plaintiff's claim that First Advantage violated the Arkansas and Federal Civil Rights Acts lacks merit, because First Advantage did not decide whether to hire Plaintiff.

2.   Plaintiff's claim that First Advantage violated the FCRA lacks merit, because: a) Plaintiff consented to First Advantage's report; b) the alias in First Advantage's report did not impact Plaintiff; and c) Plaintiff did not dispute any fact in First Advantage's report about him.

---

[1]   Plaintiff's Complaint improperly named "Corporation Service CO., dba, First Advantage CO." as a Defendant. First Advantage Background Services Corp. ("First Advantage") is the proper Defendant.

[2]   Plaintiff's Complaint names an individual (Roger Lacy), his business (D&B Janitorial Services), and a corporate entity affiliated with both (Laidlaw & Lacy, Inc.) as co-Defendants. For convenience of reference, First Advantage will refer to these three Defendants collectively as "D&B/Laidlaw."

## II.    CONCISE STATEMENT OF RELEVANT FACTS

The Court can derive the following facts from the allegations in the Complaint and from "matters incorporated by reference or integral to the claim." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931, n.3 (8th Cir. 2012) (approving consideration of same).

1. On July 3, 2018, Plaintiff submitted a job application to D&B/Laidlaw.  ECF No. 2 (Complaint) at ¶ III.1; *see also* Ex. 2 (Application) (filed by D&B/Laidlaw in the 2018 action at ECF No. 3.3).

2. Plaintiff's application stated that he had been convicted of "assault" approximately "30 years ago."  Ex. 2 at 1.

3. On July 5, 2018, D&B/Laidlaw obtained a consumer report from First Advantage.  ECF No. 2 at ¶ III.1; *see also* Exhibit 1 (copy of that report).

4. First Advantage's consumer report summarized records from the Texas Department of Public Safety which stated that, *inter alia*:  a) Plaintiff had used "Ray" as an alias; b) Plaintiff had been incarcerated in Texas as Inmate No. 219126; and c) Plaintiff had been convicted of aggravated assault on a police officer in 1986.  Ex. 1 at 2.

5. On July 6, 2018, D&B/Laidlaw informed Plaintiff that it did not have any openings for individuals with a felony record.  ECF No. 2 at ¶ III.1 (alleging that D&B/Laidlaw told Plaintiff that only one of its clients would allow individuals with a felony conviction to work in its building).

6. On July 12, 2018, Plaintiff received a copy of First Advantage's report.  ECF No. 2 at ¶ III.1.

7. In response, Plaintiff sent correspondence to First Advantage, stating:

> Please be advised, I have not given consent for any background check as such, My Rights under the Fcra have been trampled. Unless You remedy this matter, Court action will be sought. Arthur Carson 501-240-3437.

ECF No. 2 at ¶ III.4; *see also* Exhibit 3 (First Advantage's electronic record of the correspondence).

8. In August 2018, Plaintiff filed a Complaint against D&B/Laidlaw and First Advantage

9. In September 2018, D&B/Laidlaw and First Advantage removed Plaintiff's lawsuit to this Court. Case No. 4:18-cv-00692-BSM.

10. D&B/Laidlaw and First Advantage each moved to dismiss Plaintiff's claims. D&B/Laidlaw moved to dismiss them because, *inter alia*, Plaintiff had to exhaust his remedies with the EEOC before filing a civil rights claim. *Id.* at ECF Nos. 3-4.

11. In response, Plaintiff moved to dismiss his claims without prejudice, so that he could proceed before the EEOC. *Id.* at ECF Nos. 10, 15.

12. This Court granted Plaintiff's motion for voluntary dismissal and thereby allowed him to proceed before the EEOC. *Id.* at ECF Nos. 17-18.

13. On April 9, 2019, the EEOC terminated its processing of Plaintiff's claims. ECF No. 2 at Exhibit A (page 6).

14. Plaintiff then filed a new Complaint, which is all-but-identical to his 2018 Complaint, in this Court. *Id.*

### III. STANDARD OF REVIEW

Rule 12(b)(6) permits this Court to dismiss Plaintiff's Complaint if it fails to state claims for which relief may be granted.

The rule exists so that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency [may] be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

Because Plaintiff filed his Complaint *in forma pauperis*, ECF No. ---, this Court may also dismiss claims that are "frivolous." 28 U.S.C. § 1915(e)(2)(B)(i). This statute "accords judges … the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

### IV. ARGUMENT

Plaintiff alleges that First Advantage violated the Arkansas Civil Rights Act, Ark. Code § 16-123-101 *et seq*.; the federal Civil Rights Act; 42 U.S.C. § 2000e; and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ECF No. 2 at 1.

These allegations do not state claims for which relief can be granted, because:

- First Advantage did not control the decision of whether to hire Plaintiff;

- Plaintiff consented to a consumer report;

- First Advantage's reference to an alias associated with Plaintiff did not have an impact on D&B/Laidlaw's hiring decision; and

- Plaintiff's dispute to First Advantage did not identify an inaccuracy in its report.

### A. First Advantage Did Not Control the Decision of Whether to Hire Plaintiff.

Plaintiff alleges that "Defendants" violated the Arkansas Civil Rights Act, Ark. Code § 16-123-101 *et seq*., and the Federal Civil Rights Act; 42 U.S.C. § 2000e. ECF No. 2 at 1, 3-5.

Both Acts state that "employers" – a term which includes organizations and their agents – may not discriminate against job applicants who fall into one or more protected categories. Ark. Code § 16-123-107; 42 U.S.C. § 2000e-2(b).

To state a claim that First Advantage is an "employer" that violated the Civil Rights Acts, the Complaint must allege that First Advantage controlled the decision of whether to hire Plaintiff. *See, e.g., Sibley Memorial Hosp. v. Wilson*, 488 F.2d 1338, 1342 (D.C. Cir. 1973) (ruling that Civil Rights Act liability extends to entities "who control access to [] employment"); *Ball v. Renner*, 54 F.3d 664, 668 (10th Cir. 1995) (stating that "all courts" hold that to be subject to Title VII liability, entities "must be the equivalent or near-equivalent of true employers: persons who exercise employer-like functions vis-a-vis the employees").

Plaintiff's Civil Rights claims should be dismissed against First Advantage, because the Complaint does not allege that First Advantage controlled the decision of whether to hire him.

The Complaint alleges that on July 3, 2018, Plaintiff submitted an employment application to "Anita" at D&B/Laidlaw. ECF No. 2 at ¶ III.1.

The Complaint further alleges that "Anita" at D&B/Laidlaw:

• Instructed Plaintiff to obtain a Little Rock Police report;

• Informed Plaintiff that his criminal history might preclude him from being hired to work in the buildings that D&B and/or Laidlaw cleaned; and

• When Plaintiff asked if he could work "at any other Building that had job openings … hung up the Phone within 34 seconds." *Id*. at ¶¶ III.2-3.

The Complaint does not allege that Plaintiff submitted an application to First Advantage, discussed employment criteria with anyone at First Advantage, or received a final employment decision from First Advantage.

To the contrary, the Complaint's only allegations against First Advantage are that it provided a consumer report to D&B/Laidlaw "without Carson's consent," and that the report contained "inaccurate data, e.g., 'Alias name-of Arthur Ray.'" ECF No. 2 at ¶ III.1.

In summary, because the Complaint does not allege that First Advantage "controlled [Plaintiff's] access to employment," the Complaint does not state a claim that First Advantage violated either the state or federal Civil Rights Act.[3] Any such claims should be dismissed as against First Advantage.

B.  **Plaintiff Consented to First Advantage's Consumer Report.**

Plaintiff claims that First Advantage violated the Fair Credit Reporting Act by creating a consumer report "without Carson's consent." ECF No. 2 at ¶ III.1.

This appears to be a claim that First Advantage violated the Fair Credit Reporting Act at 15 U.S.C. § 1681b(b)(1)(A)(ii), which precludes First Advantage from furnishing consumer reports to employers who have not first obtained the consumer's consent pursuant to 15 U.S.C. § 1681b(b)(2)(A)(ii).

This claim should be dismissed because it is false. On July 3, 2018, Plaintiff submitted an employment application to D&B/Laidlaw that included Plaintiff's written consent to order "a consumer report" and to obtain "information from public and private sources about … my … court record." Ex. 2 at 2.

---

[3]  If the Court finds that the Complaint could be read as making Civil Rights Act claims against First Advantage, the claims should be dismissed with prejudice for the reasons set forth in D&B/Laidlaw's Brief in the prior action, which First Advantage anticipates that D&B/Laidlaw will raise again once served. *See* Case No. 4:18-cv-00692-BSM at ECF No. 4, pp. 19-30 (labelled as ARG 13-24))

Because Plaintiff consented to a consumer report, his claim that First Advantage violated the FCRA at 15 U.S.C. § 1681b(b)(1)(A)(ii) should be dismissed.

### C.     First Advantage Did Not Violate the FCRA by Reporting Alias Information.

Plaintiff also claims that First Advantage violated the FCRA by including the alias "Ray" in its consumer report about him.  ECF No. 2 at ¶¶ III.1; III.4.

This claim appears to allege that First Advantage violated 15 U.S.C. § 1681e(b), which requires First Advantage to "follow reasonable procedures to assure maximum possible accuracy of the information" in its reports.

This claim should be dismissed because:  i) First Advantage obtained the alias from the Texas Department of Public Safety, which was reasonable; and ii) Plaintiff does not allege, and cannot show, that the alias had a "substantial impact" on D&B/Laidlaw's decision to hire him.

#### 1.     First Advantage Obtained the Alias from a Reliable Source

First Advantage's consumer report states that it obtained the alias "Carson, Arthur Ray" from records maintained by the Texas Department of Public Safety.  Exhibit 2 at ¶ III.1.

This Court should find, as a matter of law, that First Advantage's use of the records from the Texas Department of Public Safety was a reasonable procedure.

Consumer reporting agencies like First Advantage comply with 15 U.S.C. § 1681e(b) when they obtain information from government sources for use in consumer reports.  *Henson v. CSC Credit Servs*., 29 F.3d 280 (7th Cir. 1994).  In *Henson*, a consumer reporting agency reported information from a court docket sheet that turned out to be incorrect.  *Id*. at 282-83.

The plaintiff alleged that the defendant agency had violated 15 U.S.C. § 1681e(b) by taking information from the docket sheet without checking it against the underlying filings.  *Id*. at 283.

The district court denied this claim, and the Seventh Circuit affirmed, stating that "as a matter of law … the credit reporting agency may rely on the accuracy of public court documents in preparing a credit report without being subject to liability under the FCRA." *Id.* at 285-86.[4]

The parallel between the facts in *Henson* and the facts at issue here should be obvious: like the docket sheet in *Henson*, records from the Texas Department of Public Safety are public documents from a governmental source.

This Court should follow *Henson*, find that First Advantage acted reasonably when it reported an "alias" on file with the Texas Department of Public Safety, and dismiss Plaintiff's § 1681e(b) claim with prejudice.

2.   **The "Alias" Did Not Have a Substantial Impact on Plaintiff.**

Even if Plaintiff could allege that it was unreasonable for First Advantage to report an alias on file with the Texas Department of Public Safety, Plaintiff must show that the alias had a "substantial impact" on D&B/Laidlaw's decision not to hire him.

One appellate court explained that "an FCRA plaintiff must produce evidence from which a reasonable trier of fact could infer that the inaccurate entry was a 'substantial factor' that brought about the denial." *Philbin v. Trans Union Corp.*, 101 F.3d 957, 968 (3d Cir. 1996).

That rule has been adopted and applied by district courts in this Circuit. *See Reed v. Experian Info. Solutions, Inc.*, 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004); *Murphy v. Midland Credit Mgmt.*, 456 F. Supp. 2d 1082, 1092 (E.D. Mo. 2006).

Plaintiff does not and cannot allege that the alias in First Advantage's report made ***any*** impact on D&B/Laidlaw's decision not to hire him.

---

[4] The *Henson* court took this position after finding that "A contrary rule of law would require credit reporting agencies to go beyond the face of numerous court records to determine whether they correctly report the outcome of the underlying action. Such a rule would also require credit reporting agencies to engage in background research which would substantially increase the cost of their services. In turn, they would be forced to pass on the increased costs to their customers and ultimately to the individual consumer." *Henson*, 29 F.3d at 285.

The Complaint indicates that D&B/Laidlaw declined to hire Plaintiff because:

a)      Plaintiff acknowledged, and First Advantage reported, that Plaintiff had a felony record (ECF No. 2 at ¶ III.1; *see also* Ex. 1 (report) and Ex. 2 (application)); and

b)      D&B/Laidlaw did not have any openings for individuals with felony records (ECF No. 2 at ¶ III.1; *see also id*. at ¶ III.3 (describing this as "Defendant's total ban on Employing Prior felons").

In short, the alias that First Advantage reported did not impact D&B/Laidlaw's decision. Plaintiff's acknowledged criminal history caused the decision.

Because Plaintiff does not and cannot allege that the alias in First Advantage's report about Plaintiff had a "substantial impact" on Plaintiff, his claim that First Advantage violated § 1681e(b) should be dismissed.

**D.      First Advantage Properly Handled Plaintiff's Pre-Complaint Dispute.**

Plaintiff claims that he complained to First Advantage that it had created a consumer report without his consent, but this complaint was "to No avail." ECF No. 2 at ¶ III.4; *see also* Exhibit 3 (electronic record of Plaintiff's correspondence, which stated that "Please be advised, I have not given consent for any background check as such").

Plaintiff appears to be claiming that First Advantage violated the FCRA at 15 U.S.C. § 1681i(a), which requires First Advantage to respond to certain consumer disputes.

This claim should be dismissed because the FCRA's consumer dispute provision only applies to disputes regarding "the completeness or accuracy of ***any item of information***." 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

Plaintiff's correspondence to First Advantage did not dispute the accuracy of the information in the report – *e.g.*, he did not claim that he had never been incarcerated in Texas, or that he was never convicted of aggravated assault of a police officer.

Rather, Plaintiff disputed whether he had consented to First Advantage's report.

Because Plaintiff did not dispute "the completeness or accuracy of any item of information" in First Advantage's report about him, his claim that First Advantage violated 15 U.S.C. § 1681i(a) should be dismissed.

## CONCLUSION

For the aforementioned reasons, Plaintiff's claims against First Advantage should be dismissed with prejudice and without leave to replead.

Date:  May 16, 2019
/s/ Jason A. Spak
Jason A. Spak
FISHERBROYLES, LLP
P.O. Box 5262
Pittsburgh, PA 15206
T:  412-230-8555
E:  jason.spak@fisherbroyles.com
*Counsel for First Advantage*

## CERTIFICATE OF SERVICE

I certify that on May 16, 2019, I filed the foregoing Brief in Support of Motion to Dismiss with the Court's ECF system, which will send a Notice of Electronic Filing to, and thereby effect service upon, all counsel of record.  I further certify that on the same date, I served the same document upon Plaintiff by first-class United States mail, postage prepaid, addressed to Arthur Carson, 10434 West 36th #10 B, Little Rock, AR 72204 and upon Defendants Roger Lacy, D & B Janitorial Services, and Laidlaw & Lacy, Inc. via email to their counsel per Fed. R. Civ. P. 5(b)(2)(E).

/s/ Jason A. Spak
Jason A. Spak
FISHERBROYLES, LLP